## No. 31,258

WILMA JANE TENNANT, a Minor, by Her Guardian, LENA STUART TENNANT, *Appellee,* v. LAURA E. LONG and RUTH L. DARY, Executrices of the Will and Testament of A. W. Long, Deceased, and THE LONG OIL COMPANY, *Defendants* (THE SINCLAIR REFINING COMPANY, substituted, *Appellant*).

(23 P. 2d 477.)

Opinion filed July 8, 1933.

*R. P. Evans* and *George Clammer,* both of Manhattan, for the appellant.

*A. E. Crane,* of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover a balance of money which, according to plaintiff's second amended petition, had been loaned by plaintiff's guardian to the late A. W. Long, of Manhattan, and to the Long Oil Company, of which he was president and principal managing officer.

The action was originally begun against Long individually, and, on May 1, 1931, plaintiff filed an amended petition in which she alleged that Long had solicited her to buy fifteen shares of the Long Oil Company stock, and as an inducement thereto he orally agreed to repay the money at any time plaintiff's guardian might need it for the education of plaintiff, and that plaintiff's guardian had accepted that offer and "took over fifteen shares of stock of the par value of $100 each and paid therefor the sum of $1,500." It was also alleged that in January, 1930, the guardian informed Long that she was in need of money and he paid her $200, and in July, 1930, he similarly paid her $300 and $45.50 additional as interest, and that the certificate of stock for fifteen shares was exchanged for one of ten shares. She also alleged that in December, 1930, she called on Long for an additional sum of $200, which he failed and refused to pay, wherefore she prayed judgment for the entire balance of $1,000 due her under the allegations of her first amended petition.

To this petition Long filed an answer which contained a general denial and a specific denial of the agreement alleged by plaintiff. It also alleged that as president of the Long Oil Company he had a transaction with plaintiff's guardian in which she acquired fifteen shares of the preferred stock of that corporation for $1,500, and that afterwards, through an arrangement with the Long Oil Company, plaintiff had surrendered her certificate for fifteen shares and received one for ten shares in lieu thereof.

Later Long died, and the action was revived in the names of Long's wife and daughter as executrices of his estate, and the Long Oil Company was made a party defendant.

Following this, plaintiff filed a second amended petition in which she alleged that Long had solicited her guardian to loan $1,500 to the Long Oil Company, and—

"That the Long Oil Company would issue to her fifteen shares of stock of said company of the par value of $100 each and the said A. W. Long agreed that he personally and that the defendant the Long Oil Company would repay to Lena Stuart Tennant for said minor said sum of $1,500 and in the meantime would let her hold the fifteen shares of said stock of said company as security for said payment; that A. W. Long for himself and for the defendant the Long Oil Company further agreed that whenever demand was made upon them for money needed for Wilma Jane Tennant they would pay to her such sum of money with 7 per cent interest; that Lena Stuart Tennant, as guardian, accepted said offer and agreed to make said loan in pursuance thereto and the said Lena Stuart Tennant, as guardian, made said loan in accordance with the offer and acceptance to the said Long Oil Company, and the Long Oil Company caused to be issued to the said plaintiff fifteen shares of its stock at the par value of $100 a share."

Plaintiff also alleged that, pursuant to this agreement, on January 1, 1930, her guardian called on Long for $200, which demand was complied with, and that she then exchanged her certificate of fifteen shares for one of thirteen shares, and six months later she was paid $300 on her demand and she exchanged her certificate for one of ten shares. In December, 1930, she again called on defendants Long and the Long Oil Company for a further sum of $200, which demand was refused, and that she sold the ten shares for the best price obtainable, $550, and brought this action for the balance of $450 of her original $1,500 investment and for interest thereon.

The Long Oil Company answered with a general denial, and denied that Long had authority to bind it by any such agreement as alleged by plaintiff, and alleged that plaintiff's original investment of $1,500 in the preferred stock of the company was an ordinary purchase by subscription, and that the subsequent transactions whereby it issued a certificate of thirteen shares to plaintiff and a later certificate of ten shares were the consequence of successive sales of stock by plaintiff with which the company had nothing to do except to register the transfers and issue new certificates therefor to the parties entitled thereto. The Long Oil Company also alleged that it was still regularly bound to the person to whom plaintiff's guardian had sold the ten shares, and that plaintiff was estopped from asserting any claim on the alleged agreement set out in plaintiff's second amended petition.

It was agreed by the litigants that the eventual sale of the ten shares by plaintiff's guardian was made to facilitate some corporate arrangements which had nothing to do with the merits of this action

and that no deduction to the advantage or prejudice of either party should be made therefrom.

Jury trial; verdict and judgment against the Long Oil Company; appeal.

1. Error is first assigned on the overruling of the demurrer to plaintiff's evidence. On that point it must suffice to say that however little credence counsel for defendant may be willing to accord to that evidence, it cannot be gainsaid that both plaintiff and her mother gave testimony which tended to prove that the transaction between plaintiff's guardian and Long was that of a loan and not an investment or purchase of the fifteen shares of stock. Moreover, there was competent evidence to show that Long was not only president but principal managing officer of the company, and that he had authority to borrow money in its behalf.

2. The next error assigned pertains to the trial court's refusal to instruct the jury that the president or managing officer of a corporation has no authority by virtue of his position to borrow funds on its behalf and to pledge its preferred capital stock as security. But the trial court did offer to give an instruction to the effect that if the jury should find and believe from the evidence that the defendant corporation did borrow the money as alleged by plaintiff and pledged its stock as security therefor, "even though it was unauthorized to do so and that such a transaction was in excess of the powers of the president of the corporation and of the corporation itself, that the corporation cannot avail itself of such a defense if you find that it received and retained the benefits arising from the transaction."

Counsel for defendant stated to the court that they preferred that no instruction on that point be given rather than one containing such a declaration of law. It is not clear that this situation presents any question for appellate review; but, if it does, we hold that the instruction which the trial court proposed to give was a correct statement of the pertinent law governing this case. In *Kelly v. Insurance Co.*, 101 Kan. 91, 165 Pac. 806, L. R. A. 1918C 1170, is was said:

"There are, indeed, two schools of jurists and two lines of authority on legal questions relating to *ultra vires* transactions. The case of *Harris v. Gas Co.*, 76 Kan. 750, 92 Pac. 1123, discusses at length both the strict and the liberal view concerning the consequences of *ultra vires* transactions. A long line of well-considered decisions has committed this court to the liberal view that a corporation may not avoid its obligation on a plea of *ultra vires* when it has

appropriated the consideration or received the benefits of it, and when the party seeking to enforce the obligation has fully performed his share of the undertaking." (Citing many cases.) (p. 98.)

See, also, *Bowers v. Atchison, T. & S. F. Rly. Co.,* 119 Kan. 202, 208, 237 Pac. 913; *Fowler v. Shaw,* 119 Kan. 576, 240 Pac. 970.

This court discerns no error in the instructions given or refused, nor can it discover anything further in the record to justify discussion.

The judgment is affirmed.