The judgment of the district court is affirmed.

No. 32,913

Ed S. Lindas, R. A. Streeter, Ralph J. Pryor and J. Park Smith, *Appellees*, v. The Salt Marsh Hunting Association and William (Bill) Petrie, *Appellants*.

(61 P. 2d 880)

Opinion filed November 7, 1936.

*Walter F. Jones, C. E. Chalfant, J. Clair Stevens,* all of Hutchinson, and *R. C. Russell,* of Great Bend, for the appellants.

*Paul R. Nagle* and *William Davison,* both of St. John, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action in the district court of Stafford county to enjoin the defendants from constructing and maintaining an artificial dam and ditch which were designed to divert the natural flow of water in Rattlesnake creek in Stafford county to certain nonriparian lands nearby.

What was substantially the same controversy, with some differences as to the personnel of the litigants, has heretofore been the subject of two lawsuits in the same court—*J. Park Smith v. C. A. Clothier, The Stafford County Gun Club Association, The Salt Marsh Hunting Association et al.*, No. 4584, decided December 12, 1919; and *The State of Kansas, ex rel. Richard J. Hopkins, Attorney General, et al., v. J. Park Smith, The Salt Marsh Hunting Association et al.*, No. 5018, decided June 2, 1922.

The first of these cases came before this court for review. (*Smith v. Clothier*, 113 Kan. 47, 213 Pac. 1071.) An excerpt from the opinion by Mr. Justice Harvey in that case is pertinent and helpful here:

"Rattlesnake creek flows through township 24 [22], range 11, in Stafford county, entering the township at the southwest quarter of section 31 and running north of east to the northwest corner of section 35, then northeast to the northeast quarter of section 25, thence northward and leaves the township in the northwest quarter of section 1. The plaintiff, J. P. Smith, is the owner of land in sections 1, 12, 13 and 24, through which the creek runs. C. A. Clothier is the owner of the west half of section 35; the Stafford County Gun Club Association owns the east half of section 35, and the Salt Marsh Hunting Association the northwest quarter of section 36. There is low, marshy ground in the northeast quarter of section 35 and the northwest quarter of section 36, frequented by ducks during the season and used for hunting ground. If the water is low or entirely gone there are few ducks, but when plenty of water is in the marsh it is quite a hunting resort. In March, 1909, C. A. Clothier leased for ninety-nine years to the Stafford County Gun Club Association the right to maintain a ditch from Rattlesnake creek, at the northwest quarter of section 35, east along the north line of said quarter section. The Stafford County Gun Club Association and the Salt Marsh Hunting Association constructed a ditch near the north line of section 35 from the northwest corner of the section to the northeast corner, connecting it with Rattlesnake creek at the northwest corner of the section and placed a twenty-four-inch tile in the ditch to carry the water from Rattlesnake creek to the salt marsh. The ditch was dug to a depth lower than the bed of Rattlesnake creek, and through the ditch they diverted a large portion of the water in the creek. Rattlesnake creek ordinarily carries a flow of water a foot to eighteen inches deep; at

times of a freshet it carries more, and at times of prolonged drought it carries very little water, but is usually a running stream."

In this case plaintiffs alleged their ownership of described lands which are riparian to Rattlesnake creek in Stafford county and dependent upon the natural flow of water therein for their domestic and agricultural purposes and for the watering of their livestock. They alleged that defendants had constructed a ditch from that creek to a natural depression of some 600 acres to 1,000 acres and which is familiarly known thereabout as the "Little Salt Marsh." This natural depression has no natural connection with the valley of Rattlesnake creek. It lies some four feet lower than the bed of that creek, so that the water which is dammed in the creek and diverted into this natural depression, does not return to the natural stream bed of Rattlesnake creek, but is completely lost to the use of plaintiffs as lower riparian proprietors.

The prayer of plaintiffs' petition was for a mandatory injunction requiring defendants to remove the dam constructed by them in Rattlesnake creek and to fill up the artificial ditch which diverted the waters of the creek to the Little Salt Marsh, and for other appropriate equitable relief.

In an amendment to their petition, plaintiffs pleaded the facts of the prior litigation, case No. 4584, *supra*, and case No. 5018, *supra*, and exhibits pertaining to the files of those cases, including copies of the judgment records, were attached thereto as exhibits.

Defendants' answer alleged that the Salt Marsh Hunting Association owned the SW¼ section 25, township 22 south, range 11 west, through which Rattlesnake creek flows, and likewise owned the quarter section immediately south thereof on which the Little Salt Marsh is partly located, to wit: the NW¼ section 36, township 22 south, range 11 west, and that the ditch complained of which they constructed to connect the creek and the marsh is on defendants' own land; and that the ditch is located entirely on the SW¼ of section 25. Defendants also alleged that by reason of their ownership of the two adjacent quarters of land they are entitled as riparian owners of the southwest quarter of section 25 to divert a reasonable amount of the water of Rattlesnake creek to the Little Salt Marsh situated in their adjacent lands. Their answer, in part, alleged—

"That in 1933 they caused to be constructed a ditch from said creek, commencing at a point on the northwest quarter (NW¼) of the said southwest quarter (SW¼) of said section 25, and extending southeasterly to a low place

in the southwest quarter (SW¼) of the said southwest quarter (SW¼) of said section 25, for the purpose of using a small portion of the surplus and flood waters of said creek. That at the same time they commenced the construction of a ditch from such low place on the southern portion of said southwest quarter (SW¼) of section 25 to Rattlesnake creek on the same quarter-section, for the purpose of permitting the water flowing from Rattlesnake creek through the first ditch aforesaid into the low place on the southwest quarter (SW¼) of said section 25 to flow back into Rattlesnake creek to the second ditch on the same quarter-section, but that said ditch was not completed at the time of the commencement of this action. That the two ditches so constructed would permit the surplus and flood waters from Rattlesnake creek to flow south to the low place on the southern part of the southwest quarter (SW¼) of said section 25 and thence back into the creek all on the same quarter-section, and all on the property owned by the defendant, The Salt Marsh Hunting Association.

"Defendants, further answering, state that the ditches so constructed and operated by them do not result in the diversion of an unreasonable amount of water from Rattlesnake creek, and that the water diverted through said ditches does not result in any loss or damage to the plaintiffs or either of them or any lower riparian owner; and defendants state that they are riparian owners on Rattlesnake creek and as such are entitled to use the water of said creek in a reasonable and proper manner, and that the amount of water used from said creek by these defendants has not at any time been an unreasonable amount and has always been a proper and lawful use of the same by these defendants."

Defendants also alleged that before proceeding to construct the ditch complained of they consulted with the plaintiffs, Lindas, Streeter, and Pryor, concerning it, and explained their plans to them; and that these three plaintiffs orally stated to defendants that they had no objection to such construction. They alleged that the ditch had been constructed at considerable expense in reliance on such oral assent of these three plaintiffs, and that they are therefore estopped to complain of the acts of defendants and estopped to maintain this action.

Defendants also alleged that in one of the earlier cases, No. 4584, the plaintiff J. Park Smith had executed a stipulation which was approved by the trial court in that case, pursuant to which they took water from Rattlesnake creek through an artificial ditch leading to the Little Salt Marsh.

The answer continued:

"Defendants, further answering, admit the proceedings in cases No. 4584 and No. 5018 referred to in plaintiffs' amended petition and state that the time said cases were filed, tried and judgment rendered therein the then owner of the southwest quarter (SW¼) of section 25, township 22 south,

range 11 west, Stafford county, Kansas, was not a party to said actions or either of them and was not bound by any of the proceedings therein; that these defendants acquired title to the southwest quarter (SW ¼) of said section 25 in 1933 by warranty deed from the legal owner of said land; that the proceedings in cases No. 4584 and No. 5018 are not *res judicata* as to said described land."

In their reply plaintiffs denied that the northwest quarter of section 36 was riparian to Rattlesnake creek, and that the contrary fact had been definitely adjudicated in case No. 5018.

On July 15, 1935, the trial court gave judgment for plaintiffs on the pleadings.

On July 19 defendants filed a motion for a new trial. This motion was argued on October 1, at which time defendants asked leave to file an amendment to their answer to the effect that on February 20, 1935, they had filed an application with the chief engineer of the division of water resources under the provisions of chapter 203 of the Laws of 1929 for a permit to construct a dam across Rattlesnake creek on the southwest quarter of section 25 for the purpose of diverting surplus and flood water into the natural depression in the northwest quarter of section 36, known as the Little Salt Marsh, and—

". . . for storage and return from time to time of a portion of such water back into Rattlesnake creek; all in accordance with the provisions of said law. . . .

"Defendants further state that in accordance with the provisions of said law they are entitled to construct a dam across Rattlesnake creek and divert water therefrom if duly authorized to do so by the chief engineer of the division of water resources of the state of Kansas."

The trial court declined to permit this amendment to be incorporated in defendants' answer.

Defendants appeal, assigning error on the refusal to permit defendants to amend their answer and on the entry of judgment on the pleadings.

Touching the first of these, it ought to be perfectly clear that the mere fact that defendants had applied to the division of water resources for leave to divert water from the creek would not affect the rights of these litigants. Whether their rights would have been affected by the granting of the permit applied for, *pendente lite*, may be doubted, but need not be decided. There is another rule of appellate practice which effectually disposes of this assignment of error, which is that the granting or refusing of permission to file

belated amendments to pleadings is addressed to the sound discretion of the trial court. (*Bank v. Badders,* 96 Kan. 533, 536, 152 Pac. 651.) And it is only when there is a manifest abuse of that discretion that reversible error can be predicated thereon. (*Hoxie State Bank v. Vaughn,* 137 Kan. 648, 650, 21 P. 2d 356.) Error based on this point cannot be sustained.

Touching defendants' objection to the judgment rendered in favor of plaintiffs on the pleadings, they first contend that the trial court ignored the plea of estoppel included in their answer. That plea was that three of these four plaintiffs had orally assured defendants that they had no objection to the construction of a ditch to let a certain volume of the water of Rattlesnake creek flow into the Little Salt Marsh if another ditch was constructed from the Little Salt Marsh to Rattlesnake creek so that the diverted waters might be returned to their natural channel.

Plaintiffs' reply did traverse the matters of estoppel pleaded in defendants' answer; and defendants offered no evidence to support that plea nor did they at any time raise the point that there was a bona fide issue of fact in the pleadings which could not be disposed of without evidence. Indeed, they do not now contend that if they had been permitted to introduce testimony they could have proved that three of these plaintiffs had given their oral consent to the construction of the dam and ditch complained of in their petition. Furthermore, defendants did not offer to show, nor do they now contend, that if this present litigation had not been instituted they would have constructed a second ditch to lead the diverted waters back to Rattlesnake creek, nor did they offer to show that it is feasible to do so. Moreover, as it is a matter of common knowledge that water will not run up hill, and as the Little Salt Marsh is lower than Rattlesnake creek, it needs no evidence to prove that the diverted waters would not return to their natural channel. We therefore conclude that the trial court committed no prejudicial error in disposing of defendants' plea of estoppel by ignoring it. (*State, ex rel., v. Iola Theater Corp.,* 136 Kan. 411, 414, 15 P. 2d 459; *Stutz v. Douglas County Comm'rs,* 139 Kan. 135, 137-138, 29 P. 2d 1094.)

The next point urged by defendants is that plaintiffs are not entitled to rely on the judgments in the earlier litigation, cases 4584 and 5018 referred to above, for the reason that plaintiffs raised all the issues anew in this action. We cannot assent to this contention. Plaintiffs' petition did allege that without right defendants had

dammed the creek and dug a ditch to divert the waters of the creek to defendants' nonriparian land. Mayhap it was possible for plaintiffs to have reached the result they sought in this action by applying for a citation for contempt against defendants for violating the terms of one or the other of the judgments heretofore decreed against the Salt Marsh Hunting Association which forbade the diversion of the waters of Rattlesnake creek. All who were in privity with that defendant are bound by those judgments. But it cannot be discerned how the procedure which plaintiffs chose to follow prejudiced these defendants. Granting, therefore, that the issues tendered in this action were not technically *res judicata,* or that plaintiffs waived the advantage they held by virtue of those earlier judgments, what is wrong with the net result? Nothing whatever. Now, for the third time the district court of Stafford county has forbidden the damming of the waters of Rattlesnake creek so as to divert them into the Little Salt Marsh in Stafford county, and that judgment contains no substantial error. It is therefore affirmed.