No. 34,799

The Eureka Building and Loan Association, *Appellee* and *Cross-appellant*, v. The Greenwood Hotel Corporation, Mabel T. Hover and Ward A. McGinnis, *Appellants*, and Paul Fresch and William Rockhill, *Appellees*.

(103 P. 2d 46)

Opinion filed June 8, 1940.

*Edward E. Pedroja*, of Eureka, *Harry C. Castor, Thomas E. Elcock*, both of Wichita, *J. L. Hunt, Lester M. Goodell* and *John H. Hunt*, all of Topeka, for the appellants.

*Homer V. Gooing*, of Eureka, *W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems* and *Robert G. Braden*, all of Wichita, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was an action to foreclose a mortgage on a hotel property in Eureka. The individual defendants, Mabel T. Hover and Ward A. McGinnis, were impleaded. The other individual defendants, Fresch and Rockhill, were lessees of the hotel, but took no active part in the litigation.

Judgment in foreclosure was decreed and the defendant corporation and Hover and McGinnis appeal. Many objections to the judgment are urged, to an understanding of which the pertinent and incidental facts will have to be stated at some length.

On March 17, 1926, the leading hotel property in the city of Eureka was owned by one H. D. Hover and his wife, Mabel T. Hover. On that date they procured a loan of $30,000 from the plaintiff and executed to it a first mortgage on the hotel property (two town lots) as security.

On July 25, 1926, Hover and wife became indebted to Ward A. McGinnis in the sum of $20,000 and gave him a second mortgage on the hotel property as security. On September 24, 1926, they made some default in their monetary obligation to McGinnis, and executed to him their warranty deed to the hotel property. On November 27, 1927, McGinnis assigned to the plaintiff the second mortgage executed to him by the Hovers.

On July 26, 1930, Hover and wife again became indebted to McGinnis in the sum of $2,500, for which amount they executed to him their promissory note.

Early in 1936, the first mortgage indebtedness held by the plaintiff was in default. So, too, was the second mortgage which McGinnis had assigned to plaintiff several years previously. Taxes on the property were delinquent, and the hotel was in need of funds to pay current debts and to make needed improvements. By that time H. D. Hover had died. His widow, Mabel T. Hover, owned the hotel furnishings free of encumbrance.

A plan was devised by the plaintiff, Mrs. Hover and McGinnis, which it was hoped might relieve the plaintiff of the necessity of foreclosing its mortgages, and might preserve the interests of Mrs. Hover and McGinnis in the hotel property and business. The plan was to this effect: A hotel corporation was to be organized with a capital stock of 600 common shares and 200 cumulative 5 percent preferred shares. The incorporators were to be Mrs. Hover, McGinnis, and three officers of the plaintiff association, Messrs. Tolman, McCue and Gooing. The 600 shares of common stock should be apportioned thus: 200 shares to Mrs. Hover, 200 shares to McGinnis, and 200 shares to the three representatives of the plaintiff. The preferred stock was to be divided equally between Mrs. Hover and McGinnis. Title to the hotel realty should be vested in the proposed corporation, and Mrs. Hover should convey to it all the hotel furnishings and related chattel equipment. The plaintiff was to cancel its first and second mortgages and supply the requisite funds to pay the hotel's current bills and to defray some expenses for needed improvements, and was to receive a new note and mortgage on all the hotel property, real and personal, for the full amount of its canceled mortgage and related advances and outlays.

On April 14, 1936, this plan was agreed to by the parties concerned. One of its terms much stressed in this lawsuit provided:

"9. The preferred stock in said corporation shall be redeemable in whole or in part at the will of the directors at the par value of the shares, and said preferred stock shall be entitled to share pro rata and equally with said mortgage in distributions of earnings, to be applied either as dividends or interest, as the case may be, or in reduction of principal; *i. e.,* at the time of each payment of interest on said mortgage indebtedness, there shall be payment or credit of a dividend at the same rate on the preferred stock, and no payment shall be made on the principal of said mortgage indebtedness without a corresponding and pro rata payment being made to the retirement of the preferred stock."

Pursuant to this agreement the hotel corporation was organized; the common and preferred stocks issued as per agreement; the title vested in the hotel company; the furnishings and pertinent chattels conveyed to it; the requisite additional funds supplied by plaintiff, its prior mortgages canceled and released; and a new note and mortgage were executed to plaintiff for $45,000, dated April 30, 1936, due May 1, 1941, bearing 5 percent interest payable semiannually on November 1 and May 1 in each year. Among the terms of the mortgage was one which provided that any default in payment of interest should render the indebtedness due immediately at plaintiff's option. Another provision was that the mortgagor should pay all taxes at least ten days before they became delinquent and furnish the mortgagee the receipts therefor. Another provision was that the buildings and other insurable property covered by the mortgage should be kept insured by the mortgagor and it would deliver to the mortgagee such policies of insurance, and that the mortgagor would pay all insurance premiums as they fell due.

Other provisions of the mortgage contract read:

"4. Mortgagor will repay to mortgagee, immediately . . . all funds hereafter advanced by mortgagee to mortgagor or for the benefit or account of mortgagor pursuant to any covenant or agreement herein contained . . .

"6. Mortgagor will maintain an accounting system satisfactory to mortgagee; . . .

"8. Every right and remedy provided in this mortgage shall be cumulative of every other right or remedy of mortgagee, whether herein or by law conferred, and may be enforced concurrently therewith; . . .

"10. Time is of the essence hereof and if default be made in the performance of any covenant or agreement of mortgagor herein contained . . . then . . . mortgagee is hereby authorized . . . at its option . . .

"(b) To declare, without notice, all sums secured hereby immediately due and payable, whether or not such default be remedied by mortgagor, and to enforce any of the rights which accrue to mortgagee hereunder and to enforce any remedy of mortgagee under the laws of the state of Kansas.

"11. Mortgagor hereby waives, to the extent permitted by law, the benefits of all valuation, appraisement, dower, homestead, exemption, stay, and moratorium laws of the state of Kansas, now in force or which may hereafter become laws, including the right to redeem the mortgaged property after the foreclosure of this mortgage, and waives any right to the possession of such property during any period of redemption."

In their amended answer defendants set up a copy of the agreement of April 14, 1936, and pleaded various defenses which extend to *twelve* printed pages of their abstract, but for purposes of this statement its contents are sufficiently indicated in the prayer of their answer:

"Wherefore, These answering defendants pray that Ward A. McGinnis be made a party defendant hereto; that the mortgage attached to plaintiff's petition as exhibit 'B' be not foreclosed and that this court hold that the principal of said mortgage and the interest thereon can be paid only from earnings of the defendant corporation; or, if this court does not so hold, then that foreclosure of said mortgage be refused for the reason that the interest on said mortgage was and is usurious, and for the further reason that said mortgage has not been and is not now in default; or, if this court does not so hold, then upon the foreclosure of said mortgage and the sale of said premises, that the proceeds arising from said sale, after the payment of taxes and the costs of this action, be distributed pro rata among the plaintiff association, the defendants Mabel T. Hover and Ward A. McGinnis, in accordance with the terms and provisions of the agreement attached to the original answer of the defendants as exhibit 5 [the agreement of the incorporators of April 14, 1936]; that these defendants have their costs herein; and that the court grant said defendants such other and further relief as to the court may seem just, equitable and proper."

The cause was tried by the district court, both its judges sitting, and without a jury. The only evidence adduced was that of one witness for plaintiff, F. J. McCue, secretary-treasurer of the plaintiff association, who also served for a time as secretary-treasurer of the hotel corporation. Defendants did call a witness, but later withdrew him and asked the court to disregard his meager testimony. Defendants then interposed a demurrer to plaintiff's evidence. This was overruled and judgment was rendered in favor of plaintiff. Defendants appeal. There is a cross-appeal from one feature of the judgment which may require attention before we conclude.

Appellants' first contention is that on February 15, 1939, when this action was begun, the indebtedness was not in default and the mortgage was not subject to foreclosure. While it is not disputed that the semiannual payments of interest on the indebtedness due on May 1, 1938, and November 1, 1938, had not been paid, the mort-

gagor claimed that it had paid over to plaintiff sufficient sums of money to pay the interest, and that the plaintiff had converted those sums of money to other purposes. The facts were these: F. J. McCue was secretary-treasurer of the plaintiff association. He was also secretary-treasurer of the hotel corporation. He and the manager of the hotel, upon their own initiative, instituted a policy of setting aside a certain portion of each month's gross receipts of the hotel to provide funds for the payment of the interest on the mortgage and for the payment of its taxes as they fell due. Pursuant to that policy enough moneys had actually been set apart for those purposes, but the result was that there remained in the coffers of the hotel insufficient funds to pay its current expenses for wages of employees, utility services, and the usual miscellaneous bills of such an institution. To meet those requirements, the same parties, McCue and the hotel manager, used most of the moneys they had been accumulating for interest and taxes to pay the hotel's more urgent current bills. Appellants denounce this practice as an outright conversion of funds, and that McCue, a responsible official of the plaintiff, participated in such conversion, which alone caused default in the payments of interest and taxes.

We cannot approve this argument. The policy of setting aside moneys every month to accumulate funds to pay interest and taxes was highly commendable, but it was only an informal policy. It had not been ordered by the hotel corporation's board of directors; and the functionaries, McCue and the hotel manager, who instituted that policy on their own initiative, did not *convert* those funds nor do anything reprehensible when they altered that policy and applied those moneys to the payment of the more immediately urgent current bills of the hotel. A clever argument is made that the moneys taken from those informally created reserves for interest and taxes were really new and additional loans of money by plaintiff to the hotel corporation. There was no evidence to support that contention and the record would not justify an inference to that effect.

It must be held that the interest on the mortgage was in default when this action was begun, and the special defense based on plaintiff's participation in an alleged conversion or illegal diversion of special funds provided for the payment of interest and taxes cannot be sustained.

It is next urged that plaintiff's mortgage was not open to fore-

closure because it was executed subject to the provisions of the statute governing building and loan associations, particularly the paragraph which reads:

"In case any borrowing shareholder shall for the period of six successive months fail to pay the dues, interest, fines and other charges required of him by the bylaws, or shall become indebted to such association in a sum equal to the gross amount of the dues, interest, fines and other charges for the period of six months, the association may proceed, according to law, to foreclose the mortgage given by such borrower as security for the loan, in which event the defaulting borrower, in addition to amount loaned as shown by the bond and mortgage given by such borrower, shall be charged with all dues, interest, premiums, fines, taxes and insurance due and in arrears, and shall have and be given credit for the withdrawal value of the shares pledged and transferred by him as aforesaid, in accordance with the rule hereinafter, in section No. 16 [17-1016], provided for the withdrawal and cancellation of shares." (G. S. 1935, 17-1012.)

Even a cursory reading of this statute shows that it is inapplicable. This mortgage was not of the usual sort contemplated by a building and loan association. The hotel corporation was not a *borrowing shareholder*. The words and phrases "dues," "fines and other charges," "premiums," "shares pledged and transferred," "withdrawal value," and "cancellation of shares," are all meaningless so far as the subject matter of this lawsuit is concerned.

It is next contended that the interest on plaintiff's mortgage was only to be paid out of the hotel's earnings and not otherwise. Our attention is directed to a bylaw of the hotel corporation, which should be considered as contemporaneous with the terms of the agreement of April 14, 1936, and with the terms of the mortgage indebtedness presently under consideration. This contention calls for a critical examination of the ninth paragraph of the agreement set out above. A fair assumption is that the agreement of April 14, 1936, as well as all that followed to carry it into effect, was made in the hope that the hotel business of Mrs. Hover and the interest of McGinnis therein could be pulled out of its financial dilemma and set on the way to solvency and success by their refinancing of the mortgages, by the addition of new money, by Mrs. Hover's contribution of the furnishings and pertinent chattels to the assets of the hotel corporation, and by whatever contribution McGinnis may have also made to it, and by their acceptance of preferred stock for their respective contributions. But it is not a fair interpretation of the agreement and its related incidents to say that plaintiff was not to receive interest on its mortgage except as that

might be realized by the earnings of the hotel. On the assumption of the parties that what they were about would succeed as a business venture, they did agree that the preferred stock held by Mrs. Hover and McGinnis "should share pro rata and equally with said mortgage in *distributions of earnings,* to be applied either as dividends or interest, as the case may be, or in reduction of principal."

So far as shown by the record, no distributions of earnings as dividends or in reduction of principal were ever made. As to payments of interest on the mortgage, it seems that after the new corporation took charge of the hotel, the preferred stock did receive a dividend in cash on one or more occasions at the times the interest on the mortgage was paid. But later the earnings of the hotel were not sufficient to pay the interest and dividends on the preferred stock, so what McCue and the hotel manager did do was to make *pro rata* bookkeeping credit entries to the preferred stock shares held by Mrs. Hover and McGinnis. But it should be noted that the preferred stock was only to receive dividends *pro rata* with the payments of interest *when such were available from earnings.* In order that there would be no obscurity or misunderstanding on this point, paragraph nine contains an explanatory clause to the effect that whenever interest is paid there shall be a payment *or credit* of a dividend to the preferred stock. Obviously this was intended to cover the possibility that there might sometimes be no earnings available for dividends when the interest had to be paid. The credit entries might some day be important to the preferred shareholders when the mortgage indebtedness should be paid off. There is a controversy as to whether the hotel corporation's bylaws were before the trial court and properly considered. Be that as it may, defendants could not minimize the hotel corporation's obligation under its note and mortgage by a rule inserted in its bylaws. However, one of those bylaws is quite pertinent. In part it reads:

"Section 1. Dividends, *to be paid out of the surplus earnings* of the corporation, may be declared from time to time by resolution of the board of directors; . . ." [Italics ours.]

Taken altogether, this court holds that the plaintiff's right to interest as it fell due was unqualified and not in the least dependent upon the earnings of the hotel business; if interest were paid out of earnings a dividend should also be paid on the preferred stock, but if the moneys available would not pay both the interest and a dividend on the preferred stock, *a credit* pro rata should be entered in

behalf of the preferred stock. Such was the operative interpretation of paragraph nine when the earnings of the hotel fell short of expectations; that interpretation was correct; and the appellants' contentions on this point cannot be sustained.

It is next contended that the whole transaction, meaning the agreement and all that followed it, including the note and mortgage sued on, was void because in effect it created an illegal partnership between plaintiff and Mrs. Hover and McGinnis, and that plaintiff transcended its corporate powers when it went into that agreement, that the participation of its officials, Tolman, McCue, and Gooing, was merely camouflage to keep the plaintiff nominally out of the agreement. On this point defendants cite paragraphs of the building and loan statute (G. S. 1935, 17-1006, 17-1007, 17-1011, and 17-1013) which pertain to ordinary loans *to borrowing shareholders*, but those provisions take nothing from the additional powers conferred by G. S. 1935, 17-1046, on such associations to invest certain balances in their funds "in first mortgages on Kansas real estate;" nor do they restrict the still wider powers conferred on Kansas corporations of every sort to save themselves from losses, under G. S. 1935, 17-601, cited below. An instructive case on this subject, well fortified by authority, was *Fidelity Ins. Co. v. Bank*, 127 Ia. 591, 103 N. W. 958, where an insurance company took stock in an insolvent bank in an effort to save itself from a loss. Later an assessment was made on the bank stock which the insurance company sought to evade on a plea of *ultra vires*. Section 4 of the syllabus reads:

"Although a transaction of a corporation may not be strictly within its grant of power, yet if made to save the corporation from loss the plea of *ultra vires* will not avail, where the agreement has been carried out and is not expressly prohibited or contrary to public policy."

See, also, 9 Am. Jur. 131, 132.

Related to this contention is the further point that plaintiff's mortgage was governed in all respects by the statute relating to building and loan associations. But it is the law and has the express sanction of statute that to save itself from loss or to salvage a doubtful loan any Kansas corporation may participate in the rehabilitation of its financially embarrassed debtor, and only the state itself can question the extent to which a creditor corporation may do so. (*Telephone Co. v. Telephone Association*, 94 Kan. 159, 162, 146 Pac. 324.) The pertinent statute in 1936, in part, reads:

"Every corporation, as such, shall have power: . . . (4) . . . to take, hold and convey such other property, real, personal, or mixed, as shall be requisite for such corporation to acquire, in order to obtain or secure the payment of any indebtedness or liability due to or belonging to the corporation. . . ." (G. S. 1935, 17-601.)

The plea of *ultra vires* cannot be successfully invoked against a plaintiff creditor for taking whatever reasonable and practicable steps it sees fit to save itself from loss, unless some express provision of statute forbids. (*Kelly v. Insurance Co.*, 101 Kan. 91, 165 Pac. 806, and citations; *Tennant v. Long*, 138 Kan. 132, 23 P. 2d 477; *Security Nat'l Bank v. Crystal Ice & Fuel Co.*, 145 Kan. 899, 67 P. 2d 527.) See, also, *Vought v. Eastern Bldg. & Loan Ass'n*, 172 N. Y. 508, 65 N. E. 496, 92 A. S. R. 761, cited and quoted in *Stumph v. Wheat Belt B. & L. Ass'n*, 148 Kan. 25, 34-35, 79 P. 2d 896.

Yet another error is urged on the trial court's ruling permitting plaintiff to file a so-called supplemental petition setting up an additional basis for its action to foreclose. This was based on the fact that after the action was begun plaintiff paid certain accrued premiums on fire and other insurance policies on the hotel property, amounting to $1,030, of which amount $488 had accrued prior. to the date this action was begun. Matters of this sort are left to the discretion of the trial court, and the cases are rare where the granting of permission to file a supplement or belated amendment to a pleading has been held to be prejudicial or erroneous; and certainly nothing of that sort appears in this instance. (*Bank v. Badders*, 96 Kan. 533, 152 Pac. 651; *Lindas v. Salt Marsh Hunting Ass'n*, 144 Kan. 490, 494-495, 61 P. 2d 880; *Carson v. City of Wichita*, 148 Kan. 215, 220, 80 P. 2d 1114.)

No material error in the judgment against defendants is made to appear.

Turning now to the cross-appeal: In the judgment in favor of plaintiff and against the hotel corporation for $49,050 and foreclosing the mortgage and directing a sale of the property to satisfy it, the court also rendered a personal judgment in favor of Mrs. Hover and *against the plaintiff* for $341.24 and a similar judgment in favor of McGinnis and *against the plaintiff* for $372.91. The general judgment further directed that the proceeds of the sale in foreclosure should be disbursed, *first,* to payment of taxes and costs; *second,* to payment of the amounts of the judgments *rendered against plaintiff* in favor of Mrs. Hover and McGinnis; *third,* to the payment of plaintiff's judgment.

Plaintiff challenges the justice of the Hover and McGinnis judgments against it, and likewise the related order of distribution of the proceeds of the sale of the property in foreclosure.

Passing for the moment the question whether Mrs. Hover and McGinnis were entitled to judgments for the amounts decreed to them, it seems clear that such judgments ought not to have been rendered in their favor *against this plaintiff*. Plaintiff owed them nothing, and no such issue was involved in this lawsuit. Were it otherwise, there would have been no basis in law or equity for ordering the paying of plaintiff's judgment debts to Mrs. Hover and McGinnis out of the proceeds of the sale of the hotel corporation's property. Counsel for defendants and cross-appellees present no argument to support these features of the judgment complained of by plaintiff, but it can be inferred that the trial court had adopted, in part at least, the theory of defendants—that the holders of the preferred stock were on the same footing as the mortgagee, and were entitled to dividends whenever plaintiff received a payment of interest under the agreement of April 14, 1936. But that was true only in a very much qualified sense—when interest was paid out of the earnings of the hotel, and not otherwise. Granting that the bookkeeping credit entries of dividends on the preferred stock made by McCue and the hotel manager were proper, the holders of the preferred stock and their accumulations *or credits* are entitled to nothing until the judgment of plaintiff is paid in full. It follows that so much of the general judgment as was entered in favor of Mrs. Hover and McGinnis and against plaintiff, and for disbursing the proceeds of the sale in the hotel property and giving them precedence over plaintiff in the satisfaction of its due, was erroneous and must be set aside, and the cause will be remanded to the district court with instructions to that effect.

On appeal, judgment affirmed; on cross-appeal, reversed.