194

No. 35,038

WILLIAM HIRT, *Appellant*, v. THE BUCKLIN STATE BANK, OF
BUCKLIN, *Appellee*.

(109 P. 2d 171)

Opinion filed January 25, 1941.

*Carl Van Riper* and *Russell L. Hazzard,* both of Dodge City, for the appellant.

*C. H. Brooks, Howard T. Fleeson, Carl G. Tebbe, Wayne Coulson, Paul R. Kitch,* all of Wichita, *George R. Gould* and *E. C. Minner,* both of Dodge City, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from an adverse judgment on the pleadings in an action to recover the balance of a sum of money

which originally had been part of a deposit in the defendant bank belonging to plaintiff's father who died in Germany about fourteen years ago.

In his first petition and also in successive amended petitions plaintiff narrated at length certain antecedent facts as the background of his cause of action, which he formulated in three counts.

Defendant leveled motions and dilatory pleas against some of plaintiff's petitions, but neither they nor the trial court's rulings thereon will need attention, because eventually plaintiff filed a third amended petition which was held good as against defendant's demurrer—for a time, at least—and that petition will require our careful perusal. Summarizing its contents, that petition alleged that for many years plaintiff's father, one Frederick Hirt, lived in Bucklin, Kan. At some unstated time he removed to Germany and resided there until his death in 1927. When he left Bucklin he had on deposit in the defendant bank about $33,500. Hirt's will was probated in Germany. By that will he made disposition of his property in Germany to various beneficiaries, and as to his deposit in the Bucklin State Bank the will provided:

"The rest of my property, which is deposited in 'The Bucklin State Bank in Bucklin, Kansas', shall be distributed amongst the three children of my first marriage.

"My oldest daughter, which has the greatest claim, shall receive 50% (fifty percent); the one 'Willy' shall receive 30% (thirty percent) and the youngest daughter 'Augusta' shall receive 20% (twenty percent)."

Nothing in the nature of ancillary administration was instituted in Kansas. In lieu thereof and by agreement of the persons concerned, a different disposition of the money in the defendant bank was effected and apportioned thus:

| | |
|---|---:|
| "The six minor children of Friedrich Hirt | $3,000.00 |
| Five other children | 5,000.00 |
| Augusta Pinneo | 5,000.00 |
| Mary Hoeme | 5,000.00 |
| William Hirt (this plaintiff) | 5,000.00 |
| Clara Hirt | 8,832.09 |
| A brother and sister | 600.00 |
| Probate court costs, attorney fees | 1,067.91 |
| Total | $33,500.00" |

How the defendant bank became apprised of this family agreement was not pleaded but the bank allegedly acquiesced in it and

disbursed most of the Hirt money in its hands pursuant to its terms. Prior to July 26, 1934, defendant had thus disbursed to plaintiff the sum of $1,000 in two $500 payments, and on that date the bank through its cashier and active manager, Marion A. Neal, gave plaintiff a written statement of the Hirt fund in its hands belonging to him. It read:

"EXHIBIT 'B'

MEMORANDUM OR AGREEMENT

The Bucklin State Bank, Bucklin, Kansas.                                   July 26th, 1934

"Below is a statement of the amount due Will Hirt on the estate of Frederick Hirt—

| | |
|---|---:|
| "Total amount of his distributive share of estate | $5,000.00 |
| Less payment made Feb., 1930 | 500.00 |
| Less payment made July 26th, 1934 | 500.00 |
| Total | $4,000.00 |

"The back interest on the $5,000, to date is $1,000, which will be paid after the $4,000 and interest is paid in full. The $4,000 will draw 4% per annum from July 26th, 1934, until paid in full.

"All future payments on this amount and interest are to be made to Mabel Hirt who will act as agent for Will Hirt.

(Signed) WILLIAM HIRT

MARION A. NEAL"

Following the making of the foregoing statement the defendant bank has paid to plaintiff out of that fund the following sums:

| | |
|---|---:|
| "August 23, 1934 | $50.00 |
| November 3, 1934 | 100.00 |
| December 16, 1934 | 50.00 |
| May 6, 1935 | 250.00 |
| May 7, 1935 | 50.00 |
| November 27, 1935 | 50.00 |
| Total | $550.00" |

Since the last date shown above, defendant has paid nothing and has refused plaintiff's demand for further payment. Hence, this action which was begun on October 16, 1937.

When defendant's demurrer to plaintiff's last petition was overruled, it filed a verified answer containing a general denial, and denied that when the elder Hirt left Bucklin or at any other time, he had placed with defendant "certain property," and expressly denied—

"That any contract, written or oral, was made by this defendant in respect thereto. Further answering, this defendant alleges that it is without trust

powers and that the acts alleged in reference to the placing and handling of said property with and by this defendant were *ultra vires* and void.

. . . . . . . . . . . .
"This defendant admits that Marion A. Neal is and has been for several years prior hereto and since the death of her father, S. D. Aulls, cashier of the defendant bank, but this defendant expressly denies that the alleged acts of Marion A. Neal as set out in the plaintiff's third amended petition were the acts of said defendant bank and denies that they were within the actual or apparent scope of the authority of the said Marion A. Neal or in the course of her employment."

Defendant's answer also denied plaintiff's right to maintain the action, pleaded the statute of limitations, and that the action was stale and barred by laches. Defendant also alleged that it was not informed whether Friederich Hirt had left a last will and testament nor whether it had been probated in Germany, and—

"This defendant further denies that there was ever entered in any court of Germany or any other court of competent jurisdiction an order of final settlement and distribution, under which order the plaintiff was entitled to any legacy, bequest, devise or inheritance from the estate of Friederich Hirt, deceased."

Some time thereafter, date not shown, defendant filed a motion for judgment on the pleadings; and as the trial court's ruling thereon is the crux of this appeal we must quote from the judgment roll at some length:

"Now on this 13th day of June, 1940, . . . The court is advised that defendant's motion for judgment on the pleadings is on file and undisposed of. . . . Thereupon said motion is argued to the court. During the arguments on said motion plaintiff moved the court for permission to amend the third amended petition by alleging that the final settlement referred to in the first line of paragraph 4 of said petition consisted of an oral agreement of distribution entered into by the heirs of Frederick Hirt, deceased, which motion is by the court overruled.

"It appearing from the pleadings and the admission of counsel that the will attached to plaintiff's second amended petition by reference was never admitted to probate or record anywhere in the state of Kansas, the court finds that plaintiff's third amended petition fails to state a cause of action and that the defendant's motion for judgment on the pleadings should be sustained.

"It is therefore by the court considered, ordered and adjudged, that defendant's motion for judgment on the pleadings be and the same is hereby sustained."

Plaintiff now brings his cause here for review, assigning error on the trial court's order denying the requested amendment to his third amended petition and on its entry of final judgment for defendant.

Touching the error assigned on the trial court's refusal to permit plaintiff to amend his last petition to show that the agreement of the Hirt heirs and beneficiaries concerning the disposition of the $33,500 in the defendant bank was oral, the usual rule of appellate review is that the allowance or refusal of belated amendments to pleadings is so largely addressed to the discretion of the trial court that error can rarely be predicated thereon (*Lindas v. Salt Marsh Hunting Ass'n,* 144 Kan. 490, 494-495, 61 P. 2d 880). In this case, however, we attach no importance to the want of the adjective "oral" to qualify the noun "agreement," for certainly its addition would have added nothing to the sufficiency of plaintiff's cause of action. If the persons concerned agreed upon a different disposition of the Bucklin bank deposit than was bestowed by the Hirt will, the validity of that agreement would not turn upon the question whether it was oral or in writing. If an agreement should be in writing but is merely oral, that is a matter of no consequence to third parties. (*Vaught v. Pettyjohn & Co.,* 104 Kan. 174, 177, 178 Pac. 623.)

So we pass to the principal question presented in this appeal, which is the propriety of the trial court's ruling that plaintiff's third amended petition did not state a cause of action and sustained defendant's motion for judgment on the pleadings.

A motion for judgment on pleadings is the equivalent of a demurrer; and in ruling on such motion, all the well-pleaded facts in the adversary's pleadings must be favorably construed, and any and all pleadings of the party making the motion must be left out of consideration. So, while we have briefly summarized above defendant's verified answer to plaintiff's last petition, we have done so to have before us whatever purely legal objections it may suggest to the sufficiency of plaintiff's petition. Under the scrutiny of a demurrer, the verified denials and allegations of fact in defendant's answer take nothing whatever from the potency of plaintiff's petition. (*Gas Service Co. v. Consolidated Gas Utilities Corp.,* 150 Kan. 715, 96 P. 2d 608; *Miller v. Sunflower Recreation Society,* 151 Kan. 930, 101 P. 2d 891.)

Repeated adjudications of this court have held that there is nothing illegal or unusual in Kansas law for the persons interested as heirs or beneficiaries of an estate, testate or intestate, to make an agreement for its disposition different from that directed by the statute of descents or the statute of wills. This court has frequently upheld family settlements of estates regardless of the testamentary

disposition thereof.  Thus in *Babst v. Babst*, 130 Kan. 826, 288 Pac. 593, it was said:

"In an action to enforce the specific performance of a contract of family settlement between heirs who were likewise devisees and tenants in common of certain properties devised in remainder to them by their father, the allegations of the petition examined and held that defendants' motions leveled thereat and their separate demurrers thereto were properly denied." (Syl. ¶ 1.)

In *Myers v. Noble*, 141 Kan. 432, 41 P. 2d 1021, it was held:

"Beneficiaries under a will have the right and power to contract between themselves for distribution of their respective portions of the estate in a manner different from that provided in the will; and such an agreement containing the mutual promises of the contracting parties is based upon a sufficient consideration." (Syl. ¶ 1.)

See, also, notes in 6 A. L. R. 555; 38 A. L. R. 759; 54 A. L. R. 976.

We must hold that the fact that the Hirt will was never probated in Kansas was of no consequence under the comprehensive allegations contained in plaintiff's petition.

Moreover, and keeping in mind that for the purpose of this appellate review the allegations of plaintiff's petition must be taken as true, it is obvious that defendant is in no position to quibble about the agreement of the parties concerned as to the division of the Hirt deposit in the defendant bank.  On grounds and assurances satisfactory to itself—whatever they were—the defendant has paid out most of the considerable sum deposited with it by Frederick Hirt.  It admits that out of that Hirt deposit it has already paid plaintiff sums aggregating $1,550 between February, 1930, and November, 1935.  Under such circumstances, and there being not the remotest contingency that the agreement of the Hirt will beneficiaries can now be challenged by anybody concerned, the bank is in no position to balk at the task and duty it undertook long ago—to apportion and divide the Hirt money in its possession according to their agreement.

More obvious still—if that be possible—is defendant's liability manifest when the text of exhibit "B" signed by defendant's cashier and managing officer is considered.  Standing alone it is a distinct and unequivocal acknowledgment of a present existing obligation of the bank to plaintiff.  Defendant argues that in plaintiff's various petitions, and particularly his last one, he does not seem to have a definite theory on which he seeks a recovery.  To our way of thinking, his theory is vastly clearer than anything in defendant's behalf

to justify it in withholding the balance of what is due him, after recognizing his right to the money by paying him $1,000 on account thereof, after acknowledging its obligation to him in writing, after rendering him an account stated, and thereafter paying out to him on six separate occasions additional sums aggregating $550 on that account so stated.

There is a good deal of narrative in plaintiff's petition which is merely matter of inducement, explanatory and helpful to a court, but not essential to the statement of his cause of action. Ordinarily this sort of pleading is unobjectionable and is frequently helpful to an understanding of the gist of the action. (Phillips on Code Pleading, 2d ed., § 292, P. 299; 49 C. J. 139.) In *Babst v. Babst*, supra, the action was for specific performance, and plaintiff's petition contained a good deal of matter which was merely explanatory and inducement. In the opinion we said:

"The motion to strike was aimed at those matters explanatory of the status and situation of the parties, the death of the father and the pending administration of his estate, the tenor of his will, the death of the widow, the matters of controversy which arose among the members of the family and of their composition by the family settlement. The motion sought to have all reference to the family settlement stricken out. Quite properly, we think, that motion was overruled. Indeed, it is seldom prejudicial error to refuse to strike out irrelevant or redundant matter from a petition unless it tends to confuse or mislead the adverse party. In pleading, it is frequently good practice to make an introductory statement leading up to the principal matter of the declaration or plea, so as to simplify, explain or elucidate the latter. Inducement in pleading is more a matter of convenience than necessity. It adds nothing to the strength of the cause of action stated, or to the strength of the defense pleaded thereto. If it tends to clarify the pleading it serves a useful purpose; if not it may be stricken." (p. 829.)

And mayhap it was unnecessary for plaintiff to attempt to state his single cause of action in three separate counts, but some of defendant's motions insisted that should be done and better done and with more definiteness and certainty than plaintiff had pleaded. Essentially plaintiff has but one cause of action, for assuredly he only asks and can only get one recovery. In *Goodman v. Beougher*, 136 Kan. 388, 15 P. 2d 414, where plaintiff had been unjustly delayed and hindered in the recovery of his due, our late Chief Justice Johnston, said:

"Defendants appear to be puzzled as to the nature and name of the action plaintiff has brought. . . .

"The defendant insists that he cannot tell what relief is sought by the plaintiff. . . .

"The name of the action brought, and whether it involved legal or equitable questions or both, is not important. If the facts stated entitle plaintiff to relief he has set out a cause of action, and on a trial should be granted the kind of relief which the facts proven warrant." (pp. 389, 391, 392.)

In *Brooks v. Weik,* 114 Kan. 402, 408, 219 Pac. 528, where the sufficiency of the pleadings was the question being considered, this court said:

"Ordinarily, it is enough fairly to inform the defendant what the suit is about, and even if inconsistencies appear, they are not fatal if, on any theory, the plaintiff states a cause of action. Whether or not the petition is technically good becomes less material after a full trial on the merits in which the subject of controversy has been thoroughly investigated."

Defendant raises the statute of limitations. We do not discern its relevancy. If the money in the bank's hands be regarded as a trust fund, the statute would not begin to run until the trust had been breached under circumstances of which the plaintiff was apprised. (*Wright v. Jenks,* 124 Kan. 604, 610, 261 Pac. 840.) If the bank cashier's statement, exhibit B, is considered merely as a written acknowledgment of an existing indebtedness under the code (G. S. 60-312), plaintiff's action would be in time if brought within five years. Regarding exhibit B as a simple account stated, the action could be begun within three years from its date. In *Morton v. Leslie,* 150 Kan. 213, 92 P. 2d 90, it was held:

"A written statement of indebtedness, in which the debtor acknowledged and agreed to pay an existing account, is examined, and it is held that under G. S. 1935, 60-312, the statement started anew the three-year statute of limitations upon the account." (Syl.)

But since plaintiff's original action was begun on October 16, 1937, and the last payment was made by the bank on November 27, 1935, defendant can and must lay aside all its professed perplexities as to what sort of a cause of action plaintiff seeks to state—whether to recover part of a trust fund, or to recover on a distinct written acknowledgment of an existing indebtedness, or on a balance of an account stated. If defendant has a bona fide defense to plaintiff's action, it must now get on with it.

Yet another point is urged against plaintiff's claim, which is that the defendant bank had no trust powers. Even so, corporations in this state are not permitted to escape their just obligations on a plea of *ultra vires.* (*Kelly v. Insurance Co.,* 101 Kan. 91, 98-99, 165 Pac. 806; *Tennant v. Long,* 138 Kan. 132, 23 P. 2d 477; *State Highway Comm. v. Ames,* 143 Kan. 847, 57 P. 2d 17; *Security Nat'l Bank v. Crystal Ice & Fuel Co.,* 145 Kan. 899, 67 P. 2d 527.)

A patient consideration of this record makes it clear that the trial court's ruling on the plaintiff's last petition and on defendant's motion was erroneous. The judgment is therefore reversed and the cause remanded for further proceedings consistent herewith.