C. E. TOLLIVER *v.* JOHNNY RILEY ET AL

5-4167                                              414 S. W. 2d 92

Opinion delivered May 1, 1967

*R. W. Laster*, for appellant.

*W. B. Howard, Jack Segars* and *Lohnes T. Tiner,* for appellee.

LYLE BROWN, Justice. Plaintiff-appellant Tolliver instituted this proceeding to cancel two conveyances he made to appellee, Johnny Riley. By bill of sale and warranty deed Tolliver conveyed to Riley the Cotton Boll Liquor Store on the outskirts of Trumann, Arkansas. The chancellor refused to cancel these instruments. The principal issue for reversal is whether there was a valid delivery of the deed and the bill of sale.

Johnny Riley was in the retail liquor business at Harrisburg and C. E. Tolliver was similarly engaged

at Trumann. Early in 1965 the two men began discussing the sale by Tolliver and the purchase by Riley of the Cotton Boll Liquor Store. By February 4th they had agreed on a sale for $32,500.00. An inventory would be taken, and Riley would pay extra for any merchandise beyond an inventory of $6,000.00. On that date they met at the office of Tolliver's attorney, Clyde Smith. An agreement was there executed styled "Sale and Purchase Option Agreement." The full purchase price was not recited.

In the days that followed, Attorney Smith had the abstract brought down to date and prepared a warranty deed and bill of sale. On February 26th the parties again met in Smith's office. On this occasion Riley brought along his attorney, Lohnes Tiner of Harrisburg. Riley brought with him two time deposit certificates in the sum of $5,000.00 each and $25,000.00 in one-hundred-dollar bills. The evidence preponderantly shows that Tolliver wanted mostly cash, but did not want bills in these denominations. He thought the bank kept serial numbers of such denominations, and for tax reasons he did not want them traced to him. Also, he apparently did not want to take the money in front of witnesses. Tolliver suggested that the final payment be postponed until Monday (following this Friday meeting). It was agreed that the seller and purchaser would meet in Trumann on Monday, at which time a mortgage debt would be paid the bank by Tolliver, the balance of the purchase price would be paid, and inventory would be taken. Tolliver told the attorneys that he and Riley could take care of these matters without the attorneys' services. These arrangements seemed to be agreeable to all parties. Riley assigned over and delivered his certificates of deposits. Tolliver executed the warranty deed and the bill of sale, which were handed to Riley's attorney. Riley and his attorney, Tiner, returned to Harrisburg. Tiner delivered the conveyances to his client and instructed him to have them recorded. This was done the following morning.

The facts just recited are substantially undisputed. The same thing cannot be said with respect to the events which followed. The voluminous transcript contains an abundance of controverted testimony. Among the numerous witnesses who testified were four of the five attorneys who participated in the trial of the case. (In this respect we invite the attorneys' attention to Canon 19 of the Canons of Professional Ethics, 237 Ark. 984.) The remaining factual point in issue which is pertinent to a decision on appeal concerns the final payment of the consideration. Tolliver asserts that he never received the balance of the purchase price, which was to be paid in cash. Riley asserts that the events leading up to, and including, final payment are as follows:

When Riley left the recorder's office on Saturday morning he was told by Attorney Tiner that Tolliver was at the Bank of Trumann and wanted him to come over and conclude the matter. Riley went to his home, obtained the cash, and headed for Trumann. Riley's journey on the way was delayed when he stopped to aid a woman motorist who was out of gas. While Riley was so engaged on the highway between Harrisburg and Trumann, Tolliver drove up. At this point, so Riley testified, he got his money out of his pick-up and got in Tolliver's car, where they counted out 218 one-hundred-dollar bills. Riley asked for a receipt, but Tolliver assured him the bill of sale and warranty deed would suffice. Riley wanted to proceed then to take inventory but was told Tolliver had to go to Little Rock. The two agreed they would meet at the liquor store the next morning (Sunday) and take inventory.

The next morning Riley went to Trumann in company with Bob Smith, who was going to operate the store under a lease from Riley. They found a Mr. and Mrs. Bell in the store. Apparently they were not open for business, but Bell worked in the store. Tolliver did not show up for the inventory. He was finally located

but advised Riley they could not take the inventory on Sunday. Tolliver said he had called Little Rock and received that information. Tolliver drove away. Riley called his lawyer and the sheriff. The locks were changed, and the inventory was completed by Riley and Smith around midnight. The next day Smith began operating the store. Tolliver came to see Riley in Harrisburg, but Riley referred him to attorney Tiner. The next occasion for any meeting between Riley and Tolliver was in court on March 8th, at which time a receiver was appointed to take charge of the store pending the outcome of litigation.

No third person testified who purported to have witnessed the final payment to which Riley testified. However, there was strong corroboration of events leading up to, and following, the exchange of cash on the highway. The chancellor found that the final payment had been made, and there is an abundance of testimony and circumstances in proof to justify his conclusion.

The essence of appellant's argument for reversal is that Tolliver did not intend to pass title on February 26th, and did not pass title because the full purchase price was not then paid. It is not necessary to labor this point, because the chancellor found that the balance of the purchase price was in fact paid the following day.

Affirmed.