FRED STUCKEY *v.* BANK OF TRUMANN ET AL

5-5337                                459 S. W. 2d 572

Opinion delivered November 16, 1970

*Gardner & Steinsiek,* for appellant.

*Barrett, Wheatley, Smith & Deacon,* for appellees.

LYLE BROWN, Justice. This litigation had its inception in the filing of a foreclosure suit by one of the appellees, Bank of Trumann, against C. E. Tolliver and Johnny Riley. Before foreclosure was perfected, the Bank of Trumann assigned the note and mortgage to the appellant, Fred Stuckey. The latter, as assignee of the bank, took the judgment in foreclosure. That judgment recited that Stuckey was entitled to be paid from monies then in the hands of another appellee, Jim H. Vandiver, clerk of the Poinsett County Chancery Court. The clerk had parted with the funds, having delivered them to C. E. Tolliver upon being assured that the note sued upon had been paid. All parties were permitted to intervene in the foreclosure suit, wherein they set up claims

against each other as will hereinafter be detailed. As to the claims of Stuckey against Riley and Vandiver, the court granted Riley and Vandiver judgment on the pleadings. As to the claim of Stuckey against the Bank of Trumann, the bank's demurrer to the evidence was sustained. Stuckey here challenges the court's ruling in favor of Riley, Vandiver, and the Bank of Trumann.

Initially, C. E. Tolliver owned a liquor store located on a two-acre tract in Poinsett County. In 1963 he borrowed $5,000 from the Bank of Trumann and gave it a mortgage on the property. In February 1965, Tolliver sold the business to Johnny Riley and executed a contract of sale and purchase, and a warranty deed to the premises. A dispute arose relative to the contract, Tolliver contending he had never received all the purchase price. Tolliver filed suit against Riley, seeking cancellation of the written instrument. Tolliver deposited with the court two certificates of deposit given him by Riley when the written instruments were executed. He asked that the money be held by the clerk and paid out upon orders of the court. (Apparently it was anticipated that the money would be refunded to Riley upon cancellation of the written instruments, less any damages Tolliver might have suffered from the fact that Riley took charge of the liquor store and proceeded to operate it.) Riley's contention of full payment and valid delivery of the instruments prevailed in that case and we affirmed. *Tolliver* v. *Riley*, 242 Ark. 467, 414 S. W. 2d 92 (1967). Subsequent to that decision the clerk of the chancery court was directed to disburse the $10,000, first in satisfaction of the note held by the Bank of Trumann, and the balance to Tolliver.

Our decision in *Tolliver* was handed down May 1, 1967. Jim Vandiver, court clerk and one of the appellees, testified that Tolliver and his attorney came to the clerk's office shortly after the decision and requested delivery of the full deposit; that he was by them advised that the bank had been paid; that he called the bank and was advised to the same effect; and that he delivered to Tolliver and his attorney the $10,000. Subsequently

thereto, so Vandiver testified, he took his mortgage record to the bank for marginal endorsement and was then advised that the indebtedness had been assigned to Stuckey.

Since December 1965, there had been pending in the Chancery Court of Poinsett County a foreclosure suit styled *Bank of Trumann* v. *Tolliver and Riley*. That suit was based on a delinquency in payment of the $5,-000 note made in 1963 to the bank by Tolliver. Riley was named because he naturally claimed some interest in the land by virtue of his transaction with Tolliver.

Early in February 1966, the Bank of Trumann verbally agreed to assign the Tolliver note and mortgage to Fred Stuckey, appellant here. That transaction was to be without recourse and with the right vested in Fred Stuckey to continue the foreclosure suit in the name of the bank. (Stuckey filed an amendment setting up the assignment.) The assignment was not recorded. Shortly thereafter—on February 16, 1966—Tolliver presented to the bank teller a check drawn by Stuckey for the full amount of the debt. The teller marked the note paid and turned it over to Tolliver, along with a release deed made to Tolliver. When the bank president shortly discovered the transaction he executed the assignment to Stuckey and notified the latter of the teller's transaction with Tolliver.

The foreclosure action proceeded to decree on May 24, 1968. The court awarded Stuckey judgment on the note and directed the clerk to pay the judgment from funds then held in escrow. The court had not been informed that the escrow funds had been released to Tolliver.

Upon being made aware of the court order the chancery clerk (Vandiver) forthwith petitioned for modification of the decree, asserting that he had released the funds upon being assured by Tolliver and the Bank of Trumann that the debt had been paid. He emphasized that he had no notice of the assignment to Stuckey.

Vandiver asked that Stuckey be required to release the lien; and alternatively Vandiver asked for judgment against the bank and against Tolliver.

The Bank of Trumann answered the pleading of the clerk. It was there asserted that the bank's advice to the clerk was that the bank had been paid. It specifically denied advising the clerk that the note itself, which the bank knew to be in the hands of Stuckey, had been extinguished.

Riley responded by asking for judgment against the bank in case the land sold for the debt. Alternatively he prayed judgment against the clerk if the bank was held not to be liable.

Still another and important issue was raised by amendments to the multitude of pleadings we have summarized. Both Riley and the clerk alleged that the Bank of Trumann had released the mortgage prior to its assignment to Fred Stuckey; and that the note had been marked paid by the bank and delivered to Tolliver, along with a deed of release. In reply to those allegations the bank admitted that on February 16, 1966, Tolliver presented it a check drawn by Stuckey, in return for which the bank marked the note paid and delivered it to Tolliver, along with a release deed. Subsequently and on the same day, so the bank asserted, it was informed that Stuckey's check was not intended to be used to extinguish the note, but was for the purpose of perfecting an assignment; and that such an instrument of assignment was drafted and delivered to Stuckey.

Then came another amendment by Stuckey. He prayed that if he was barred from foreclosing due to actions of the bank, he recover from the bank as damages for breach of the written assignment given Stuckey by the bank. In that event he fixed his damages in a sum equal to the amount of the assignment.

Before any testimony was taken in the case, Vandiver and Riley introduced as a supplement to their

pleadings, and by stipulation, the original note, the release deed, and the assignment. Thereupon each of them—Riley and Vandiver—moved for judgment on the pleadings. Those motions were granted. The principal benefit of the judgment in favor of Riley was to extinguish the lien and clear his title to the two acres. By the same token, Vandiver, the clerk, was relieved of any liability.

The effect of the recited rulings was to leave for determination the claim of Stuckey against the Bank of Trumann, namely that the assignment of the note by the bank to Stuckey carried an implied warranty that no action had been taken by the bank which had nullified the note and the security. On that issue the testimony revealed that before the assignment of the note to Stuckey, the bank had marked the note paid and delivered it to Tolliver, along with a release deed. That action was taken by a teller when Tolliver brought a Stuckey check to the bank and paid the debt. That transaction was contrary to a prior arrangement between the president of the bank and Stuckey, wherein it was agreed that Stuckey would pay the debt, take an assignment, and proceed with the foreclosure. When the error was discovered the assignment to Stuckey was prepared and delivered. Then Jim Vandiver, the clerk, was called as a witness for Stuckey. He testified that when Tolliver and the latter's attorney asked to draw down the $10,000 deposit, Vandiver called the bank; that he explained the purpose of his call and was assured that the debt had been paid; that several days later he contacted the executive vice-president of the bank about releasing the record; and that he was then advised that the note had been assigned.

We have recounted the essence of the proof made by Stuckey. Thereupon the Bank of Trumann demurred to the evidence and that motion was sustained. Stuckey appealed from the granting of that motion; additionally, Stuckey appeals from the judgments awarded on the pleadings to Riley and Vandiver.

*The Judgments on the Pleadings.* The judgment in favor of Riley was clearly proper. The escrow fund came from money which Riley paid to Tolliver. The trial court vested in its clerk the responsibility of seeing to it that part of those funds be used to clear the lien against Riley's property. The lien was in fact cleared by a release deed from the bank. No party, save Tolliver, who did not appeal, charged Riley with any misconduct relative to the release of the escrow money.

Likewise, we conclude that the judgment on the pleadings in favor of Vandiver, the clerk, was appropriate, insofar as Stuckey was concerned. (Stuckey is the only litigant who appeals from that action in favor of Vandiver.) It was revealed by the pleadings that Stuckey placed in Tolliver's hands a check payable to the Bank of Trumann for the balance due on the Tolliver note; that the bank marked the note paid and executed a release deed; that the bank assured Vandiver that the debt had been paid; and that as a result of the recited transactions Vandiver released the funds to Tolliver. Stuckey cannot now be heard to complain about a transaction which Stuckey himself initiated. Nor can any mistake of the bank (due to lack of information possessed by the teller) be charged to Vandiver.

Appellant Stuckey contends that the motion for judgment on the pleadings is the same as a motion for summary judgment and asked us to set aside the judgments because the ten day notice provision in the summary judgment statute was not complied with. Ark. Stat. Ann. § 29-211 (c) Supp. 1969). When the Riley and Vandiver motions for judgment were made, Stuckey made no specific objection thereto. More particularly, if Stuckey called the court's attention to the notice requirement of the statute, it is not in the record. He waited until the court had ruled on the demurrer and then made a general objection in the words, "note our exceptions to the ruling of the court." Not only should the objection be timely made, but it should have been sufficient to apprise the trial court of the specific contention of error.

Appellant Stuckey further contends that there was a genuine issue of a material fact to be resolved. We do not agree as between Stuckey on the one hand and Riley and Vandiver on the other. All material facts as between them were so substantially agreed to as to leave no factual dispute to be settled; we think that conclusion is reflected from an examination of our comments on the pleadings.

*The Sustaining of the Bank's Demurrer to the Evidence.* The action of the court must be sustained. Stuckey completely failed (in fact did not offer) to produce evidence of damages. It is not questioned that he owned the Tolliver note and that he obtained judgment thereon against Tolliver. The burden therefore was upon Stuckey to establish that the judgment, or some part thereof, was not collectible, and to further establish the amount of his damages by reason of being unable to foreclose on the lands in question. Also, when Stuckey accepted the assignment from the bank (without recourse) he did so with full knowledge of the Tolliver-bank transaction; in fact Stuckey retrieved the note from Tolliver.

Affirmed.

FOGLEMAN, J., dissents.

444

JOHN A. FOGLEMAN, Justice, dissenting. I would agree that a decree rendered only upon the evidence heard by the court after all parties had rested should be affirmed. I cannot agree, however, that either the judgment on the pleadings in favor of Vandiver or the sustaining of the bank's demurrer was proper.

A motion for judgment on the pleadings is nothing more than a belated demurrer. *Walker* v. *Von Wedel,* 108 Okla. 292, 237 P. 86 (1925); *Hirt* v. *Bucklin State Bank,* 153 Kan. 194, 109 P. 2d 171 (1941); *State* v. *Skagit River Navigation & Trading Co.,* 181 Wash. 642, 45 P. 2d 27 (1935); *Art Bronze & Iron Works* v. *Beaman,* 199 N. C. 537, 155 S. E. 166 (1930); *Power* v. *Gum,* 6 Mont. 5, 9 P. 575 (1886); *Harman* v. *Yeager,* 100 Utah 30, 110 P. 2d 352 (1941); *Erickson* v. *Starling,* 235 N. C. 643, 71 S. E. 2d 384 (1952). It questions the sufficiency of the pleadings of the adverse party to state a cause of action which would support a judgment in his favor, admitting, for the purposes of the motion, each fact well pleaded. *Pennington* v. *Kross,* 154 Kan. 667, 121 P. 2d 275 (1942); *Arnote* v. *Southwestern Pipe & Supply Co.,* 189 Okla. 394, 117 P. 2d 529 (1941); *Dixon* v. *Fulker,* 155 Kan. 399, 125 P. 2d 364 (1942); *Harman* v. *Yeager, supra.* All such facts pleaded must be favorably construed and all fair inferences drawn in favor of the adverse party and all pleadings of the moving party left out of consideration. *Hirt* v. *Bucklin State Bank, supra; Erickson* v. *Starling, supra.* It also admits the untruth of the moving party's allegations. *State* v. *Skagit River Navigation & Trading Co., supra.* It presents the question whether there is any issue of material fact stated in the pleadings. If there is, the motion should not be sustained. *Redskin Mining Co.* v. *McNeal Machinery Co.,* 108 Okla. 213, 234 P. 985 (1925); *Floyd* v. *Johnson,* 17 Mont. 469, 43 P. 631 (1896); *Pennington* v. *Kross, supra; Erickson* v. *Starling, supra.* These motions are not favored by the courts and, when made, great liberality in construing the assailed pleading should be accorded. *Harman* v. *Yeager, supra.* They are to be granted only whenever it appears that one of the parties is entitled to judgment

as a matter of law from conceded facts appearing from the pleadings making up the issues. *Cole* v. *Thacker,* 158 Kan. 242, 146 P. 2d 665 (1944); *Peppers Gasoline Co.* v. *Mitchell,* 190 Okla. 259, 122 P. 2d 998.

The directions to the clerk with reference to the deposit placed in his hands were explicit. They were:

> That the Clerk of this Court should be ordered and directed to pay the present holder of the note and mortgage hereinbefore mentioned all amounts now due for principal and interest on said note and secured by the lien of said mortgage and that such payment should be made from the proceeds of the time deposit certificates now in possession of the Clerk and in the registry of the Court as hereinabove mentioned; that in making such payment the Clerk of the Court shall require the present holder of said Note to mark such note "paid in full" and to surrender same to the Clerk and further require the holder of said note to satisfy such mortgage of record and release the lien thereof.

The request for release of the deposit came from the unsuccessful litigant and his attorney. The record does not reflect that the information that the Bank of Trumann had been paid was confirmed either by the attorney for the adverse party, by the bank's attorney of record, or for that matter by anyone at the bank having authority to act in such matters. As soon as the record was submitted to a properly authorized official of the bank for satisfaction, the true situation was disclosed. It does not appear that the note marked paid or the release deed executed by the bank was displayed to the clerk. Even after the bank's officers had refused to enter satisfaction of the record, the court was not informed of the release of the funds placed in escrow. It seems to me that there was a material issue of fact as to the propriety of the clerk's action under the circumstances.

Neither do I agree that failure to prove the amount of his damages justified sustaining a "demurrer to the evidence." On appeal from the sustaining of such a motion, the evidence must be viewed in the light most favorable to appellant and given its strongest probative force in his favor, and the court's action will be held proper only if such evidence when so considered fails to make out a prima facie case. *Ashworth* v. *Hankins,* 238 Ark. 745, 384 S. W. 2d 254; *Keck* v. *Gentry,* 238 Ark. 672, 384 S. W. 2d 242. I submit that Stuckey did show that the bank was liable to him for a breach of their agreement. Having done so, he was entitled to collect nominal damages, even if he did not show entitlement to a greater amount. *Adams* v. *Adams, Executrix,* 228 Ark. 741, 310 S. W. 2d 813. In the cited case, we remanded a chancery court decree with directions to award nominal damages. It was pointed out that some damages are always presumed to follow from the violation of any right.

We have consistently held that nominal damages may be recovered for the bare infringement of a right, for a breach of contract unaccompanied by actual damages, or when other damages from the violation of a right cannot be proved. *Western Union Telegraph Co.* v. *Aubrey,* 61 Ark. 613, 33 S. W. 1063; *Cathey* v. *Arkansas Power & Light Company,* 193 Ark. 92, 97 S. W. 2d 624; *Brock* v. *Smith,* 14 Ark. 431; *Yaffee* v. *Fort Smith Light & Traction Co.,* 159 Ark. 636, 252 S. W. 925; *Missouri & Arkansas Railway Company* v. *Treece,* 210 Ark. 63, 194 S. W. 203.

I would reverse that part of the court's decree granting the clerk's motion for judgment on the pleadings and the bank's "demurrer to the evidence" and remand the cause for further proceedings.